UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MALISSA L. MAESTAS,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL J. ASTRUE, Commissioner of Social Security,<br><br>    Defendant. | No. CV-06-220-CI<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 16, 17.) Attorney Clifford B'Hymer represents Plaintiff; Special Assistant United States Attorney David Blume represent Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 4.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment.

**JURISDICTION**

In June 2003, plaintiff Malissa Maestas (Plaintiff) filed for Supplemental Security Income benefits and Disability Insurance Benefits. (Tr. 52, 204.) She alleged disability due to stress,[1] a

---

[1] Although Plaintiff's initial disability report references an inability to work due to stress, (Tr. 63), the record does not

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 1

clavicle injury, shoulder and knee pain, with an onset date of April 19, 2003. (Tr. 52, 64, 84.) Benefits were denied initially and on reconsideration. (Tr. 29-36.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ R. J. Payne on September 29, 2005. (Tr. 224-78.) Plaintiff, who was represented by counsel, testified. Medical expert Robert Berselli, M.D., also testified. The ALJ denied benefits and the Appeals Council denied review. (Tr. 7.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF THE CASE

The facts of the case are set forth in detail in the transcript of proceedings, and are briefly summarized here. Plaintiff was born March 21, 1957, and was 48 years old at the time of the hearing. (Tr. 262-63.) She had a high-school equivalency degree. (Tr. 70.) Her past work experience was as a certified nurse's aide and hotel housekeeper. (Tr. 65.) She lived with her spouse, who was disabled, and provided daily care for him. (Tr. 261.) She testified she was unable to work due to her knee and shoulder injury. (Tr. 243, 247.)

## ADMINISTRATIVE DECISION

At step one, ALJ Payne found Plaintiff had not engaged in

---

include medical evidence establishing a stress-related condition or mental health treatment. Further, in her appeal of the ALJ's denial of benefits, Plaintiff represents she became disabled due to "multiple orthopaedic injuries, including that of the left knee, right clavicle fracture and right should sebaceous cyst." (Ct. Rec. 16, Att. at 2.)

substantial gainful activity since her alleged onset date. (Tr. 21.) He found her history of nonunion clavicle fracture (left), sebaceous cyst (right shoulder) and left knee meniscal tear were severe impairments, but they did not meet or medically equal an impairment listed in Appendix I, Subpart P, Regulations No. 4 (Listings). (Tr. 22.) He found Plaintiff's allegations of total disability were not totally credible. At step four, he found Plaintiff could perform work at a sedentary level, and was not physically capable of performing her past relevant work, which was medium level work. (Id.) He found Plaintiff's "capacity for sedentary work is substantially intact and is not compromised by nonexertional limitations." (Id.) Applying the Medical-Vocational Guidelines at step five, he found Plaintiff could perform a significant number of jobs in the economy. He concluded Plaintiff had not been under a "disability," as defined by the Social Security Act, through the date of his decision. (Id.)

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> A district court's order upholding the Commissioner's denial of benefits is reviewed *de novo*. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

## SEQUENTIAL PROCESS

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (*citing* 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

## ISSUES

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Plaintiff argues the ALJ erred when he (1) did not give adequate weight to her attending physicians' opinions, and (2) improperly discounted her testimony. (Ct. Rec. 16, Att. at 4.)

## DISCUSSION

**A.  Credibility**

In the absence of affirmative evidence of malingering, an ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. The ALJ's reasons must be "clear and convincing." *Morgan*, 169 F.3d at 599. Here, there is no evidence of malingering. Furthermore, "the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) (citation omitted). The following

factors may be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002). An unexplained failure to seek treatment or follow prescribed treatment may undermine a claimant's credibility. *Rollins v. Massanari*, 261 F.3d 853 (9th Cir. 2001). If a claimant produces objective medical evidence of an underlying impairment that could reasonably cause pain, an adjudicator may not reject a claimant's allegations based solely on a lack of objective medical evidence to "fully corroborate the alleged severity." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (citation omitted). The ALJ need not completely reject nor completely accept the claimant's allegations. *Social Security Ruling (SSR)* 96-7p. When a claimant can spend a substantial part of his day engaged in the performance of physical activity which is transferable to a work setting, such a finding is sufficient to discredit allegations of disability. *See Morgan,* 169 F.3d at 599-600. However, the Social Security Act does not require a claimant to be totally incapacitated to be eligible for benefits. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

After summarizing the medical evidence, the ALJ found, despite Plaintiff's allegations of total disability, she reported caring for her invalid spouse, an ability to stand for "a couple of hours," to

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

sit for two hours and lift a gallon of milk,[2] and household activities of shopping, cooking, and doing laundry. (Tr. 19.) He also found that although medical records from 2004 recommended arthroscopic surgery, the treatment notes indicated limited follow-up or treatment, and objective imaging evidence indicated normal results. (Id.) Based on this evidence, he concluded Plaintiff's allegations were not totally credible. (Tr. 19, 20.) These findings are not sufficiently "clear and convincing" to discount Plaintiff's credibility.

The Commissioner may not deny benefits if a claimant's condition is remediable, but she cannot afford the necessary medical treatment. *Gamble v. Chater*, 68 F.3d 319 (1995). To do so is contrary to the purpose of the Social Security regulations and the Commissioner's policies. *SSR* 82-59 (interpreting 20 C.F.R. §§ 404.1530, 416.930). As explained by the Commissioner, failure to follow prescribed treatment is justified if "the individual is unable to afford prescribed treatment which he or she is willing to accept, but for which free community resources are unavailable." *Id*. The record clearly indicates that Plaintiff was waiting for funding from Labor and Industries to proceed with her knee surgery. (Tr. 146, 147, 153, 154, 276.) Plaintiff's inability to follow through with recommended surgery due to financial constraints does not undermine her credibility. Further, Plaintiff's allegations of exertional limitations and pain are consistent with Dr. Buratto's treatment notes and opinions, discussed below, that were improperly

---

[2] Depending of the type of milk, a gallon of milk weighs between 8.5 and 8.8 pounds. *See* http://www.onlineconversion.com.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 7

rejected by the ALJ. As for her activities of daily living, she testified she had had, up until recently, 35 hours of in-home assistance, someone drove her to her shopping, and the pace at which she cared for her spouse was quite slow. (Tr. 268-69, 272-74.) This testimony was not specifically rejected by the ALJ. It is not clear from the record that Plaintiff's physical activities involved in caring for her household and invalid spouse at her own pace, occasionally on crutches and at home where she can periodically rest, are transferable to the workplace. *See Fair,* 885 F.2d at 603. The ALJ's credibility determination is not supported by substantial evidence.

**B.   Medical Opinions**

Plaintiff argues the ALJ did not give proper weight to the opinions of her attending physician, Gregory Buratto, M.D., and her orthopedic surgeon, Scott Hutson, M.D., when he found she could perform sedentary work.[3] Specifically, she argues that Dr. Burrato's Medical Source Statement indicates she was precluded from carrying or lifting more than two and one half pounds for a sustained period, should only stand or walk for a total of forty-five minutes to one

---

[3] Sedentary work requires an ability to sit for a total of six hours of an eight-hour day and an ability to walk and stand a total of two hours in an eight-hour day. It also involves lifting no more than ten pounds at a time, and the occasional lifting or carrying articles like docket files and small tools. Medium work requires lifting 25 pounds frequently, and standing or walking off and on for about six hours in an eight-hour day; sitting may occur intermittently. *SSR* 83-10.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 8

hour in an eight-hour day, and should only sit for two hours without interruption. Dr. Buratto also opined she had moderate postural limitations. (Tr. 161.) She argues these limitations render her disabled, and the ALJ erred when he did not give clear and convincing reasons for rejecting them. (Ct. Rec. 16, Att. at 4-6). She also contends Dr. Hutson's recommendation that she have arthroscopic surgery supports her claim that she is totally disabled due to her knee problems. (Ct. Rec. 16, Att. at 6.)[4]

In a disability proceeding, it is the role of the ALJ to resolve conflicts in medical evidence. A treating physician's opinion is given special weight because of his familiarity with the claimant and her physical condition. *See Fair*, 885 F.2d at 604-05. If the treating physician's opinion is not contradicted, it can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If contradicted, the ALJ may reject the opinion if he states specific, legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv.*, 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605. Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic

---

[4] Plaintiff mistakenly attributes notes by Dr. Buratto to Dr. Hutson in her contention that Dr. Hutson reported she is "precluded [from] bending, squatting, prolonged standing or walking because of degenerative knee that needs to be replaced." (Ct. Rec. 16, Att. at 6.) Plaintiff's citation to the record references clinical notes from Dr. Buratto. (Tr. 3 (Exhibit 7F), 151.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

techniques unless it is rejected with "clear and convincing" reasons. *Holohan*, 246 F.3d at 1202-03.

To meet this burden, the ALJ can set out a detailed and thorough summary of the facts and conflicting clinical evidence, state his interpretation of the evidence, and make findings. *Thomas*, 278 F.3d at 957; *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is not required to accept the opinion of a treating or examining physician if that opinion is brief, conclusory and inadequately supported by clinical findings. *Id.*

Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support for doctors' reports based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion. *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604. Even where an ALJ does not specifically state that he rejects a physician's opinions, it is proper for a reviewing court to draw inferences from the ALJ's discussion of the physician's findings and opinion, if inferences are there to be drawn. *Magallanes*, 881 F.2d at 755.

Here, the ALJ summarized the medical evidence, including Dr. Buratto's August 2005 medical assessment, noting that Dr. Buratto opined Plaintiff could sit eight hours in an eight-hour day, at two hour intervals; could stand or walk no more than 45 minutes to one hour in an eight-hour day; and could lift no more than two and one half pounds. (Tr. 19, 160-62.) Dr. Buratto's opinions regarding Plaintiff's exertional limitations were contradicted by non-

examining agency physicians, (whose opinions are considered expert medical opinions, 20 C.F.R. §§ 404.1527(f), 416.927(f)), and the non-examining medical expert who testified at the hearing. (Tr. 231-42.) In March 2004, agency physician Charles Wolfe, M.D., reviewed the medical records and opined Plaintiff had the residual functional capacity (RFC) to lift frequently 25 pounds and to stand or walk for about six hours in an eight-hour day, and sit with normal breaks for about six hours in an eight-hour day. (Tr. 138.) Medical expert Robert Berselli, M.D., an orthopedic specialist, reviewed the record in its entirety, and concurred with Dr. Wolfe's findings, with the exception that Plaintiff had no restrictions in her ability to sit.[5] (Tr. 167-68.) Therefore, the ALJ must state specific and legitimate reasons for rejecting Dr. Buratto's contradicted opinions.

In discussing Dr. Buratto's opinions, the ALJ stated "[Dr. Burrato] indicated that given her employment as a nurse's assistant and housekeeper, she 'most likely would need retraining to return to gainful employment once knee as been treated' which clearly does not show an endorsement for 'disability.'" (Tr. 17.) However, the ALJ did not give specific or legitimate reasons for rejecting Dr. Buratto's opinion that she could not walk for more than one hour in an eight-hour day until her knee was treated. Rather, the ALJ

---

[5] Dr. Berselli testified Plaintiff could do medium work with nonexertional limitations in kneeling, stooping, bending and climbing stairs. (Tr. 232-33.) He opined the objective imaging in medical records showed "fraying of the meniscus," which was not an indication for knee surgery. (Tr. 236.)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

found Dr. Buratto's "outlined residual functional capacity assessment/specifically-noted limitations would be accommodated at the sedentary level." (Tr. 19.) This is legal error, as sedentary work requires an ability to lift up to 10 pounds and standing and walking up to two hours in a workday. Dr. Buratto's unrejected opinions regarding Plaintiff's exertional limitations are not consistent with sedentary work. *Supra,* n.3. Further, as discussed above, Plaintiff's inability to follow-up with recommended knee surgery she could not afford does not preclude her from benefits if she is otherwise disabled. It follows that Plaintiff's failure to follow up with recommended surgery due to financial constraints is not a legitimate reason to discount Dr. Buratto's residual functional capacity assessment. *See Gamble*, 68 F.3d at 321; *SSR* 82-59.

Dr. Buratto also opined in 2005 that Plaintiff could not lift more than 2.5 pounds occasionally for two to three hours, explaining that deterioration of cartilage "precludes her lifting and carrying any significant amount or sustained activity." (Tr. 160-61.) The ALJ did not give specific or legitimate reasons for rejecting this exertional limitation. Although Plaintiff testified she could hold a gallon of milk with two hands, she stated she could not always lift it or carry it when she was using her crutches. (Tr. 250, 269.) This testimony is not inconsistent with Dr. Buratto's opinion that she was limited in her ability to lift and carry more than 2.5 pounds for a sustained time. Having failed to specifically reject these significant exertional limitations, the ALJ's RFC determination that Plaintiff's capacity for sedentary work was

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

substantially intact is unsupported by substantial evidence. *SSR* 83-10. Because the ALJ's RFC findings did not reflect accurately Plaintiff's functional capacity, his use of the Medical-Vocational Guidelines at step five is legal error requiring remand.

**C.   Step Five - Use of the Medical-vocational Guidelines**

At step five, the burden shifts to the Commissioner to show that (1) the claimant can perform other substantial gainful activity; and (2) a "significant number of jobs exist in the national economy" which claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984). The Medical-Vocational Guidelines (Grids) is a matrix system developed by the Commissioner for resolving cases that involve substantially uniform functional capacities. *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 578 (9th cir. 1988). The Grids were adopted to improve the efficiency of disability benefits proceedings. *Id.* Their use was upheld as valid in *Heckler v. Campbell,* 461 U.S. 458 (1983). However, the Grids are an administrative tool, and there are strict limits on when the Commissioner may rely on them; the exclusive use of the Grids is appropriate only where "a claimant's functional limitations fall into a standardized pattern accurately and completely described by the Grids." *Tackett,* 180 F.3d at 1103 (*citing Desrosiers*, 846 F.2d at 577). Where the Grids do not accurately describe a claimant's condition, the Grids are used as a "framework for decision-making," and vocational expert testimony is required to determine if there are jobs in that national economy that the individual claimant can perform. *See Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988); *SSR* 83-12. Where the Grids are not

determinative, the Commissioner has the burden of showing specific jobs within the claimant's capabilities. *See Kail,* 722 F.2d at 1498. When a claimant cannot perform a full range of sedentary work, her particular limitations, including pain, and their impact on the full range of sedentary work must be evaluated individually. *SSR* 83-12.

Here, at step five, the ALJ took "administrative notice" of historical "expert vocational analysis." (Tr. 21.) Vocational expert testimony is not a proper subject to be administratively or judicially noticed, is inadequate to satisfy a step five requirement for vocational expert testimony and is contrary to the Commissioner's policy. *SSR* 83-10; *SSR* 83-12. The ALJ's failure to call a vocational expert is reversible error.

**D.   Remedy**

There are two remedies where the ALJ fails to provide adequate reasons for rejecting the opinion of treating or examining physicians. The general rule, found in the *Lester* line of cases, is that "we credit that opinion as a matter of law." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004); *Lester,* 81 F.3d at 834; *Smolen v. Chater,* 80 F.3d 1273, 1291-92 (9th Cir. 1996); *Pitzer*, 908 F.2d at 506; *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989). Under the alternate approach found in *McAllister v. Sullivan*, 888 F.2d 599 (9th Cir. 1989), a court may remand to allow the ALJ to provide the requisite specific and legitimate reasons for disregarding the opinion. *See also Salvador v. Sullivan*, 917 F.2d 13, 15 (9th Cir. 1990) (*citing McAllister*). The *McAllister* approach appears to be disfavored where the ALJ fails to provide any reasons

for discrediting a medical opinion.  *See Pitzer*, *supra*; *Winans v. Bowen*, 853 F.2d 643 (9th Cir. 1988).

Case law requires an immediate award of benefits when: (1) the ALJ has failed to provide legally sufficient reasons for rejecting [a medical opinion], (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Harman*, 211 F.3d at 1178; *Smolen*, 80 F.3d at 1292.

Here, it is not clear that Plaintiff's limitations, as opined by Dr. Buratto, would require a finding of disability.  Vocational expert testimony is required to evaluate Plaintiff's exertional and non-exertional limitations and their impact on her ability to work. On remand, the ALJ will conduct a new sequential evaluation, make new credibility findings, and give legally sufficient reasons for the rejection of medical and other source opinions.  At step five, vocational expert testimony will be taken to evaluate Plaintiff's individual limitations and her ability to perform other work in the national economy.  Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 16)** is **GRANTED**;

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 17)** is **DENIED;**

3. Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 15

provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for **PLAINTIFF,** and the file shall be **CLOSED**.

DATED May 16, 2007.

```
            S/ CYNTHIA IMBROGNO
         UNITED STATES MAGISTRATE JUDGE
```

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 16